UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**United States of America**,

        *Plaintiff*,

v.                                                 Case No. 3:17-cr-028 (3)
                                                      Judge Thomas M. Rose

**Darion Stargell,**

        *Defendant*.

---

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF 224).**

---

Pending before the Court is Motion by Defendant Darion Stargell, assisted by counsel, for a Reduction of Sentence Under the Compassionate Release Provisions Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018. (ECF 224). The Government filed a response, (ECF 225), and the time for filing a reply has expired.

**I.  Background**

Between late 2016 and early 2017, Darion Stargell worked with other people to import bulk amounts of fentanyl and heroin into the Dayton metropolitan area for resale. See ECF 98, Plea Agreement at 264. Throughout that time, Stargell received drug couriers sent from Mexico to Dayton. See id. Upon their arrival, Stargell acquired from them large quantities of illegal drugs that he then redistributed in exchange for cash. See id. In this manner, Stargell helped distribute

hundreds of grams of controlled substances. See PSR ¶¶ 41-47.

In September 2017, Stargell pleaded guilty to one count of conspiring to distribute fentanyl. Prior to sentencing, the Probation Office prepared a PSR that detailed Stargell's criminal history. Although only in his late twenties at that time, Stargell had sustained multiple felony drug convictions, including for: conspiracy to traffic cocaine (2008); trafficking in heroin (2012); trafficking in heroin (2014); and engaging in a corrupt pattern of activity (2017). See PSR ¶¶ 67 – 78.

The PSR also reported that Stargell suffered from no serious medical conditions at the time of the offense. After a hearing, this Court sentenced Stargell to 120-months of imprisonment in this case. See ECF 143, Judgment.

The offense was not violent, and did not involve firearms. Since being incarcerated, Stargell has worked at his rehabilitation. Stargell has completed academic and job skill courses. ECF 224-1, Exhibit B - Individualized Reentry Plan - Program Review. Stargell submits that he has the support of friends and family within the community. Stargell's family members are prepared to assist him should he be released. Stargell's mother, Jeanette McDowell, has offered to have Stargell reside with her upon release in West Carrollton, Ohio.

According to the United States Sentencing Commission, "[r]ecidivism rates decline relatively consistently as age increases," from 35.5% under age 21, to 9.5% overage 50, lessening the need to protect the public from further crimes of the defendant under 3553(a)(2)(C). See, United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines. Stargell is now thirty-one years of age.

Stargell submits that, should he not be granted compassionate release, that he qualifies for

relief under the CARES Act. Prior to the COVID-19 pandemic, the BOP had discretion to release inmates who had served at least 90% of their sentence to home confinement to assist the inmate with post-incarceration community reentry. 18 U.S.C. §3624(c)(1)-(2). "Home confinement" does not mean the person returns to normal life; rather, it means that the person is subject to strict monitoring and restrictions by the Court and Probation Office for the remainder of their custodial sentence. The home confinement statute not only authorizes, but in fact urges, BOP to "place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." 18 U.S.C. §3624(c)(2). Under normal circumstances, the "maximum amount of time permitted" is 10% of the inmate's sentence or six months, whichever is shorter. Id.

On March 27, 2020, President Trump signed the CARES Act into law in response to the COVID-19 pandemic, expanding the scope of the home confinement statute. The CARES Act authorized the Attorney General to remove the time limits on home confinement under 18 U.S.C. §3624(c)(1)-(2). It permits the BOP to release inmates to home confinement even if they have not served 90% of their sentence, or if they have more than six months left to serve. Specifically, the CARES Act provides:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the amount of time for which the Director is authorized to place a prisoner in home confinement . . ., as the Director deems appropriate.

See H.R. 748 §6002 at Div. B, Tit. II, Sec. 12003(b)(2).

On April 3, 2020, Attorney General Barr issued a memorandum in which he made the requisite finding that emergency conditions will materially affect the functioning of the BOP.

3

Attorney General Barr directed the BOP to release inmates from institutions that are already overcome by COVID-19, naming three facilities in particular and extending the order to "similarly situated facilities where you determine that COVID-19 is materially affecting operations." FCI Gilmer, where Stargell is incarcerated, has already seen several staff members contract the coronavirus, causing the facility to fall under the Attorney General's directive.

At FCI Gilmer, no inmates or staff are currently infected. Vaccines have arrived, and 141 staff members are vaccinated. Of 1,509 total inmates at FCI Gilmer 1,037 are vaccinated. There has been one inmate death, but 293 inmates and 73 staff members have recovered from COVID.

Under the CARES Act and the Attorney General's directive, because FCI Gilmer's operations have been materially affected by COVID-19, the BOP now has the authority to transfer Stargell to home confinement to serve the remainder of his sentence, followed by supervised release.

COVID-19 is a viral disease for which there is currently neither treatment nor cure. It is highly infectious and particularly likely to spread among populations where individuals are incapable of remaining physically distant from one another. Among viral diseases, the mortality rate for COVID-19 is high.

Public health experts have warned that incarcerated individuals "are at special risk of infection" and are "less able to participate in proactive measures to keep themselves safe." *Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States* (March 2, 2020), at https://bit.ly/2W9V6oS. Prior to the vaccine, the conditions in BOP facilities provided a hospitable environment for COVID-19 to spread. Joseph A. Bick,

4

*Infection Control in Jails and Prisons*, Clinical Infectious Diseases 45(8): 1047-1055 (2007), available at https://doi.org/10.1086/521910; Vice, *Sick Staff, Inmate Transfers, and No Tests: How the U.S. is Failing Federal Inmates as Coronavirus Hits* (Mar. 24, 2020), available at https://www.vice.com/en_us/article/jge4vg/sick-staff-inmate-transfers-and-no-tests-how-the-us-is-failing-federalinmates-as-coronavirus-hits.

As a result of these concerns, on May 18, 2020, the Department of Justice issued internal guidance which directs that the Government concede that defendants who have certain CDC risk factors can establish "extraordinary and compelling reasons" that warrant a reduction in sentence. (See Government's Supplemental Response, *United States v. Albert M. Firebaugh IV*, No. 16-20341 (S.D. Fla June 1, 2020), ECF 43.

## II. Analysis

Defendant asks the Court to grant him a reduction in sentence as permitted by 18 U.S.C. § 3582(c)(1)(A)(i) and to consider what he alleges are extraordinary and compelling reasons for doing so. Section 603(b) of the First Step Act, which was signed into law on December 21, 2018, modified 18 U.S.C. § 3582 to allow a defendant to bring a motion on his or her own behalf either "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub L. No. 115-391, 132 Stat. 5194; *see also United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020) ("If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait

30 days after his first request to the prison," and "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them") (internal quotation marks omitted) (alterations adopted).

A district court has limited authority to modify a sentence. "Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). Section 3582(c)(1)(A) grants such authority in certain limited circumstances. It provides in part:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

Thus, the Court can modify a term of imprisonment if it finds that (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) such a reduction is appropriate "after considering the factors set forth in § 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020); *United States v. Spencer*, No. 20-3721, 2020 U.S. App. LEXIS 28051, at *4, 2020 WL 5498932 (6th Cir. Sept. 2, 2020).

While judges "have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *United States v. Jones*, No. 20-3701, – F.3d –, 2020

WL 6817488 at *9 (6th Cir. November 20, 2020), the Court references U.S.S.G. § 1B1.13 for guidance. Therein, the Sentencing Commission identifies four circumstances in which "extraordinary and compelling reasons" may exist. *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in § 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). United States Sentencing Commission, Guidelines Manual, § 1B1.13, at cmt. n.1 (Nov. 1, 2018) (Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)). Those four circumstances are: (A) Medical Condition of the Defendant; (B) Age of the Defendant; (C) Family Circumstances; and (D) other extraordinary and compelling reasons. *Id.* Each of the four circumstances has its own parameters. *Id.* Commentary also confirms that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.* at cmt. n.3; *see also United States v. Keefer*, No. 19-4148, 2020 U.S. App. LEXIS 32723, at *6-7, 2020 WL 6112795 (6th Cir. Oct. 16, 2020) ("[i]n Application Note 1 to § 1B1.13, the Commission also listed the 'extraordinary and compelling reasons' that might entitle a defendant to a sentence reduction").

The policy statement also encourages the Court to consider whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; *see also Kincaid*, 802 F. App'x at 188; *Spencer*, 2020 U.S. App. LEXIS 28051, at *4 ("[t]he district court must also find that the defendant is not a danger to the safety of any other person or to the community") (internal quotation marks omitted). Section 3142(g) provides factors to be considered in making that "danger to the safety" determination.

7

Specifically, 18 U.S.C. § 3142(g) states:

> (g) Factors to be considered. The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of § 1591 [18 USCS § 1591], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g); *see also United States v. Jones*, No. 20-3748, 2020 U.S. App. LEXIS 32451, at *4-5 (6th Cir. Oct. 14, 2020).

The factors set forth in § 3553(a) "include, among others, 'the nature and circumstances of

8

the offense'; the defendant's 'history and characteristics'; the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, and afford adequate deterrence; and the need to avoid unwarranted sentencing disparities." *Jones*, 2020 U.S. App. LEXIS 32451, at *6 (quoting 18 U.S.C. § 3553(a)(1), (2), (6)).

Moreover, "compassionate release is discretionary, not mandatory." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that a court "may" reduce the term of imprisonment); *Keefer*, 2020 U.S. App. LEXIS 32723, at *7 ("The statute's plain text makes evident the discretionary nature of a compassionate-release decision," and "the statute lists factors that, when present, *permit* a district court to reduce a sentence") (emphasis in original).

The Bureau of Prisons has taken significant measures to protect inmates. On March 13, 2020, in accordance with its Coronavirus (COVID-19) Action Plan, BOP began to modify its operations to minimize the risk of COVID-19 transmission into and inside its facilities. Since that time, BOP has repeatedly revised the Action Plan to address the crisis. Beginning November 25, 2020, BOP implemented Phase Nine of the Action Plan, which currently governs operations. https://sallyport.bop.gov/co/hsd/infectious disease/COVID19/index.jsp. The current operations plan follows all national guidelines and requires that, upon intake, all inmates be secured in their assigned quarters for a period of at least 14 days in order to stop spread of the disease. Inmates are required to wear masks at all times except eating and sleeping. Three washable cloth masks have been provided to each inmate. Only limited movement is afforded to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited movement of inmates and detainees among its facilities. Symptomatic inmates and asymptomatic inmates

9

with a risk of exposure are placed in quarantine until cleared by medical staff. Social visits, where allowed, are non-contact. *See* www.bop.gov/coronavirus/COVID19_status.jsp. (Telephone minutes have been increased from 300 a month to 500, with no charge.) Finally, inmates and staff are being vaccinated.

In an effort to assist inmates who are most vulnerable to the disease and pose the least threat to the community, BOP is also exercising greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed BOP to prioritize transferring inmates to home confinement in appropriate circumstances when those inmates are vulnerable to COVID-19 under the CDC risk factors.

As of mid-October 2020, the CDC has concluded that individuals with certain conditions such as smoking, Type II diabetes, chronic heart problems, cancer, immuno-compromised due to organ transplant, and obesity "are at an increased risk for severe illness from COVID . . ." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed October 27, 2020). During the current COVID-19 pandemic, an inmate who presents one of the risk factors on that list, as confirmed by medical records, and who is not expected to recover from that condition, would satisfy the extraordinary and compelling prong of the compassionate release policy statement -- even if that condition in ordinary times would not allow compassionate release.

Conversely, the CDC has opined that "there are limited data and information about the impact of [other] underlying medical conditions and whether they increase the risk for severe illness from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed October 27, 2020). People who

fall into this category and "might be at an increased risk for severe illness" include individuals with moderate to severe asthma. Id. Given the lack of data concerning these conditions, their interaction with COVID is speculative and would not at this time satisfy the extraordinary and compelling criteria of the policy statement.

A subsequent memorandum from the Attorney General on April 3, 2020 further directed BOP to expand the range of inmates eligible for home confinement, as authorized by the CARES Act. *See* § 12003(b) (2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted March 27, 2020. In assessing whether home confinement is appropriate for a particular inmate, BOP weighs numerous factors, including the inmate's medical conditions, age, crime of conviction, and conduct while in prison; conditions in the inmate's particular institution; availability of post-release transportation, housing and supervision for the inmate; and the inmate's risk from COVID-19 if released. Prior to releasing an inmate, BOP is directed to implement a fourteen-day quarantine in order to protect the community.

BOP asserts it is devoting all available resources to executing the Attorney General's directives, and that it is systematically assessing the inmate population to determine which inmates are most appropriate for transfer. From the Attorney General's memo on March 26, 2020 until November 6, 2020, the BOP placed 7,766 inmates on home confinement. *See* www.BOP.gov/coronavirus (accessed November 6, 2020). By January 29, 2021, 7,837 were on home confinement; but counting those who had completed their home confinement, along with those currently on it, that number was 21,069. (id. accessed January 29, 2021).

BOP claims its home confinement program provides a centralized, consistent mechanism for identifying prisoners for whom home confinement is most appropriate. The Court hopes the

resulting reduction in prison population will benefit all remaining prisoners. The Courts hesitates to augment a systematic effort by granting compassionate release to prisoners who may be less deserving than others nationally, and without the capacity to conduct the comprehensive and consistent review that can be undertaken by BOP.

The Court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) if, "after considering the factors set forth in § 3553(a) to the extent that they are applicable," the Court "finds that" "extraordinary and compelling reasons warrant such a reduction" "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress directed that the Sentencing Commission adopt policies regarding "what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(a)(2)(C) & (t). The Sentencing Commission fulfilled Congress's directive by issuing U.S.S.G. § 1B1.13. The policy statement provides for reduction of a sentence, after considering the § 3553(a) factors, if (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

    (I) suffering from a serious physical or medical condition,

12

> > (II) suffering from a serious functional or cognitive impairment, or
>
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(D).

Because the Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include only certain specified categories of medical conditions, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement. If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion will be denied.

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction. The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594,

597 (3d Cir. 2020). To classify COVID-19 without further extenuating circumstances as an extraordinary and compelling reason would be wrong and would be detrimental to B.O.P.'s organized and comprehensive anti-COVID-19 regimens.

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under § 3582(c) (1) (A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably could be found to be "serious" and to "substantially diminish[ ] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I). But as part of its analysis of the totality of circumstances, the Court should consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated. That will typically depend on the inmate's proposed release plans and whether a known outbreak has occurred at his or her institution.

Here, Stargell has attached medical records that indicate that he once suffered a possible eye infection and later had issues with wisdom teeth. ECF 888-91. The CDC has reached no conclusions concerning the interaction between these ailments and COVID-19. Because it is speculative at this time that he faces severe danger from the interaction of COVID-19 and his confirmed conditions, Stargell has not established an extraordinary and compelling reason for a reduction in a sentence.

Even if Stargell satisfied the "extraordinary and compelling reasons" inquiry, relief is

unwarranted considering the factors set forth in 18 U.S.C. § 3553(a). See § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). The nature and circumstances of Stargell's crime weighs against relief. This Defendant committed a serious offense, attempting to traffic a large amount of drugs.

Stargell's history and characteristics also suggest that this motion should be denied. Prior to this offense, he has multiple convictions for drug distribution. Similarly, the need to avoid sentencing disparities and the need to ensure just punishment weigh against relief.

The Court recognizes it is extraordinarily difficult to combat the spread of COVID-19 within a prison, as both courts and the CDC have recognized. *United States v. Gardner*, No. 14-cr-20735-001, 2020 U.S. Dist. LEXIS 129160, at *4–*5 (E.D. Mich. July 22, 2020). Even under otherwise ideal circumstances, prison conditions prevent the kind of physical distancing necessary to prevent the spread of this virus. Id. However, as of January 15, 2021, the BOP administered 17,189 doses of the vaccine. One dose has been administered to 7,576 staff and 5,457 inmates. A completed series of two doses have been administered to 1,027 staff and 1,051 inmates. https://www.bop.gov/resources/news/20210116_COVID_vaccine_efforts_commended.jsp.

Stargell has proposed a release plan that appears feasible. But the need for the sentence imposed to "provide the defendant with…medical care…in the most effective manner," 18 U.S.C. § 3553(a)(2)(D), does not weigh in favor of granting this motion to reduce the sentence. The spread of COVID-19 at FCI Gilmer is shrinking and Stargell's identified health risks are not known to exacerbate his risk should he contract the disease. Cf. *United States v. Williams-Bethea*, No. 18-cr-78, 2020 U.S. Dist. LEXIS 96651, at *10–*11 (S.D.N.Y. June 2, 2020); *United States v. Rodriguez*, No. 2:03-cr-271, 2020 U.S. Dist. LEXIS 58718, at *32 (E.D. Pa. Apr. 1, 2020).

Moreover, factors in §§ 3553(a)(2)(A), (B) and (a)(6) counsel against reducing the sentence under these circumstances. First, Stargell was only sentenced in 2017. His current projected release date is not until 2026.

The time Stargell has served in prison has achieved only a little of the original sentence's retributive, deterrent, and incapacitate purpose. Defendant's continued detention now does not pose danger of serious injury and death, so the Court cannot say it is a risk grossly disproportionate to Stargell's conduct of conviction. *Cf. Williams-Bethea*, 2020 U.S. Dist. LEXIS 96651, at *12. Because of the seriousness of the offense, and because it would present a risk to the public, compassionate release is not warranted here.

Even when a defendant is able to demonstrate a potentially "extraordinary and compelling reason," compassionate release is not necessarily appropriate. Under the applicable policy statement, the Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Additionally, the Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. *See* § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). Here, "the nature and circumstances" of Defendant's crime weighs against relief at this point. 18 U.S.C. § 3553(a)(1).

Stargell's "history and characteristics" likewise do not support relief. 18 U.S.C. § 3553(a)(1). The need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, and protect the public similarly cuts against relief. See 18 U.S.C. § 3553(a)(2). In view of the § 3553 sentencing factors, compassionate release is improper here. *See* § 3582(c)(1)(A).

### III. CONCLUSION

Defendant does not meet the requirements necessary to be granted relief under 18 U.S.C. § 3582(c)(1)(A). Thus, the Court **DENIES** Motion for a Reduction of Sentence Under the Compassionate Release Provisions Pursuant to 18 U.S.C. 3582(c)(1)(A) and the First Step Act of 2018. ECF 224.

**DONE** and **ORDERED** in Dayton, Ohio on Wednesday, June 23, 2021.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE